UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cr-20098-BLOOM/Elfenbein

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL ANTHONY ABBOTT,

    Defendant.
_____/

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss for Vindictive Prosecution ("Motion"), ECF No. [32], filed on November 25, 2024. The Motion was referred to the Honorable Judge Marty Fulgueira Elfenbein for Report and Recommendation ("R&R"). ECF No. [35]. On February 22, 2025, Judge Elfenbein issued an R&R, recommending that the Motion be denied. ECF No. [53]. Given the proximity of the trial date, Judge Elfenbein advised the parties that they would have 10 days from the date of being served with a copy of the R&R to file any written objections and 7 days to file a response to any objections. *Id.* at 20. Defendant timely filed his objections on March 4, 2025. ECF No. [60]. Plaintiff filed its Response to Defendant's objections on March 11, 2025. ECF No. [61]. The Court has reviewed the Motion, the record, the briefings, and is otherwise fully advised. For the reasons set forth below, the Court adopts the R&R in full.

    **I. BACKGROUND**

The Court assumes the parties' familiarity with the facts of this case and adopts the factual and procedural background contained in the R&R. ECF No. [53] at 1-2. The following background provides only the facts necessary to analyze the R&R and address Defendant's

objections. The following facts are uncontested unless otherwise noted.

On December 18, 2022, Defendant allegedly sent an email threatening to shoot specific, named police officers who were working with the Coral Gables Police Department ("CGPD"). *Id.* at 1-2. This email was forwarded to the Chief of CGPD who had the email shared with the FBI. *Id.* at 2. The FBI opened an investigation in January 2023 and interviewed Defendant on December 5, 2023. *Id.* After the interview, the U.S. Attorney's Office closed the case and the FBI started its closing procedures. *Id.* at 7. Although the U.S. Attorney's Office initially did not intend to prosecute Defendant, subsequent events led the FBI to reopen the case. *Id.* at 4, 7. On January 1, 2024, Defendant was arrested under the Marchman Act. *Id.* at 4. He was involuntarily detained, and law enforcement discovered a firearm, a holster, four casings, and three unfired bullets in Defendant's front yard. *Id.* Defendant states that he was "only involuntarily taken to the hospital under the pretext of the Marchman Act when he demanded to know why he had been detained and thrown in the back of a police car." ECF No. [60] at 5. Defendant does not contest that the firearm, holster, four casings, and three unfired bullets were found in his front yard or that the firearm belong to Defendant. *Id.* Defendant does not object[1] to the R&R's finding that his "severely intoxicated state caused him to once again negatively interact with members of CGPD." ECF No. [53] at 18. On January 19, 2024, Defendant sent a pre-suit letter to the City of Coral Gables. *Id.* at 19. No evidence has been presented that the U.S. Attorney's Office or Agent Oliver, the FBI Agent tasked with investigating Defendant for his December 2022 threats, had

---

[1] Defendant states that the "Marchman Act commitment was baseless" because Defendant "was released after only twelve hours." ECF No. [60] at 5. In citing the Marchman Act, Defendant emphasizes that the Act applies to "impairment due to *substance abuse* and loss of the ability to make rational decisions regarding *treatment* or a likelihood of causing *serious* harm[.]" *Id.* (emphasis in original). The Court interprets this emphasis to suggest that Defendant is arguing that, although he may have been intoxicated, he was not so intoxicated as to pose a danger to himself or others. However, this is belied by the uncontested facts that Defendant's firearm was found outside, unattended, and with unfired ammunition. *Id.*

2

any knowledge of the letter at the time the FBI decided to reopen the case.[2] *Id.* On February 8, 2024, Defendant filed a civil lawsuit against the City of Coral Gables and two of the officers Defendant had allegedly threatened. *Id.* at 4, 12. Federal investigators did not learn of Defendant's civil rights lawsuit until March 2024, after a federal grand jury was scheduled to convene for the Government's presentation of evidence to indict Defendant for the December 2022 threats. *Id.* at 18.

## II. LEGAL STANDARD

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)) (alterations omitted). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the R&R to which an objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those

---

[2] Defendant argues that a December 19, 2023 email demonstrates that the FBI had notice of Defendant's impending civil rights lawsuit. ECF No. [60] at 6 (citing ECF No. [50-1]). In an email to members of CGPD, Agent Oliver stated he spoke with Defendant, who told Agent Oliver "[Defendant] is attempting, unsuccessfully, to get FDLE and all sorts of lawyers involved to investigate the 'crime syndicate' that is Coral Gables, but I am sure you are aware of that." ECF No. [50-1] at 1. That email does not demonstrate, as Defendant suggests, that the FBI was aware of Defendant's impending civil rights lawsuit. It merely demonstrates that the FBI was aware of Defendant's "on-going feuds with Coral Gables PD and [Defendant's] neighbors." *Id.* Indeed, neither the FBI nor CGPD could have been aware of the impending civil rights lawsuit as of the date of the email—December 19, 2023—because the pre-suit letter was not sent until January 19, 2024. ECF No. [60] at 6.

portions are reviewed for clear error. *Macort*, 208 F. App'x at 784; *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001).

"It is improper for an objecting party to . . . [submit] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R." *Marlite, Inc. v. Eckenrod*, No. 10-cv-23641, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) (quoting *Camardo v. Gen. Motors-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)). A court, in its discretion, need not consider arguments that were not, in the first instance, presented to the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009). A district court may accept, reject, or modify a magistrate judge's R&R. 28 U.S.C. § 636(b)(1).

### III. DISCUSSION

Defendant raises two main objections to the R&R. First, he argues that Judge Elfenbein's determination to not apply a presumption of vindictiveness was based on three cases which are "legally and factually distinguishable from the unique factual scenario here." ECF No. [60] at 2. Second, Defendant disputes the R&R's factual findings that (i) "CGPD exercised no influence in the federal case," (ii) that Defendant "was Marchman Acted at his residence," and (iii) that Defendant's firearm had been discharged when it was recovered by police on January 1, 2024. *Id.* at 4-5.

Defendant challenges the R&R's reliance on *United States v. Tyrrell*, 269 F. App'x 922 (11th Cir. 2008), *United States v. Miller*, 948 F.2d 631 (10th Cir. 1991), and *United States v. Wilson*, 503 F. App'x 598 (10th Cir. 2012). Defendant notes that all three of those cases "involved fraud-based offenses that were the culmination of document intensive investigations." ECF No. [60] at 2. "By contrast," Defendant was "charged in a one-count indictment based on a

4

single line plucked out of an e-mail chain that began and ended on December 18, 2022, and which was in the government's hands within days." *Id.* at 3. "By March of 2023," Defendant states that "the lead agent believed the government had sufficient evidence to charge [Defendant]. Instead, the government closed its investigation in December of 2023." *Id.* Defendant's argument that this case "is far different from the cited fraud cases that declined to apply a presumption of vindictiveness in document intensive cases involving *necessarily* lengthy and evolving investigations," does not affect the R&R's analysis. *Id.* at 4. Defendant suggests that it is suspect that "the lead agent believed the government had sufficient evidence to charge" Defendant in March 2023, but closed the investigation in December 2023. *Id.* at 3. However, as Judge Elfenbein noted, "these steps demonstrate that the USAO and the FBI were not sitting on their hands in this case but were actively investigating the matter throughout 2023." ECF No. [53] at 17. Indeed, on May 31, 2023, Agent Oliver emailed CGPD to let them know that the "AUSA has been tied up in a trial and we are still waiting on the indictment." ECF No. [50-1] at 2. After Defendant was interviewed in December 2023, AUSA Diaz Espinosa provided sound reasoning for declining to prosecute the case: "Defendant was no longer in the district, had no further interactions with law enforcement, had been admonished about his actions, and did not, therefore, appear to be a danger." ECF No. [53] at 17. As Plaintiff points out in its Reply, "Defendant never grapples with the fact that the USAO is an agency of limited resources." ECF No. [61] at 4. Therefore, in determining which cases to pursue, "prosecutors must consider the Principles of Federal Prosecution (such as danger to the community or deterrence and, of course, the interests of justice) in deciding which cases to bring." *Id.* As a result, nothing insidious should be inferred from the delay between establishing probable cause in March 2023 and closing the investigation in December 2023. ECF No. [53] at 17.

Additionally, Defendant notes that there is "evidence that the government exercised its

Case 1:24-cr-20098-BB   Document 67   Entered on FLSD Docket 04/07/2025   Page 6 of 7

Case No. 24-cr-20098-BLOOM/Elfenbein

discretion to close the investigation and prosecution of" Defendant, but then "exercised its discretion to re-open the investigation" and filed criminal charges against Defendant "around the time that CGPD received notice" of Defendant's lawsuit. *Id.* at 4. However, this is easily explained by Defendant's January 2024 arrest, which provided "ample evidence to support the Government's decision to reconsider Defendant's prosecution." ECF No. [53] at 18.

Regarding Defendant's factual objections, even taking them as true, they have no bearing on the R&R's analysis.

> [T]he decision to decline prosecution was based on the fact that Defendant had not been seen in Coral Gables or Miami-Dade County and had no further contact with the subjects of his alleged threats or the organization for which they worked—factors that led the Government to believe Defendant would not act on them. But Defendant's actions in January 2024 changed the factual terrain on which the Government's conclusion rested.

ECF No. [53] at 17.

Regardless of whether the Marchman Act detention was "baseless," as Defendant states, "Defendant's return to Coral Gables brought him nearer to the subjects of his alleged threats and, from the Government's perspective, this made it easier for Defendant to carry out his threats." *Id.* at 18. And most importantly, "[t]he evidence . . . also showed that federal investigators did not learn of Defendant's civil rights lawsuit until March 2024, after a federal grand jury had already been scheduled to convene for the Government's presentation of evidence." *Id.* Putting aside that Defendant's lawsuit was brought against CGPD, not the U.S. Attorney's Office or the FBI, it is illogical to apply a presumption of vindictiveness to the prosecution when the prosecutors were not even aware of the lawsuit when they decided to reopen the case.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The R&R, **ECF No. [53]**, is **ADOPTED**;

2. Defendant's Objections, **ECF No. [60],** are **OVERRULED;**

3. Defendant's Motion to Dismiss for Vindictive Prosecution, **ECF No. [32],** is **DENIED**;

**DONE AND ORDERED** in Chambers at Miami, Florida on April 7, 2025.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record