UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cr-20098-BLOOM/Elfenbein

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL ANTHONY ABBOTT,

    Defendant.
_____/

## ORDER ON MOTION TO EXCLUDE 404(B) EVIDENCE

**THIS CAUSE** is before the Court upon Defendant Michael Anthony Abbott's Motion to Exclude 404(b) Evidence ("Motion"), ECF No. [72], filed on April 28, 2025.[1] The Government filed a Response, ECF No. [73], to which Defendant filed a Reply. ECF No. [75]. The Court has considered the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. The Motion is granted.

**I.    BACKGROUND**

On March 14, 2024, Defendant was indicted for a violation of 18 U.S.C. § 875(c). ECF No. [3]. The indictment alleges that, on December 18, 2022, Defendant "in an email sent through the Internet . . . stated, 'I will shoot onsite: [E.P., A.P.P., A.S., and D.G.]," four law enforcement officers from the City of Coral Gables Police Department. ECF No. [3-1] at 1. On March 21, 2025, Defendant filed a Motion to Exclude Evidence of Other Acts Under Rule 404(b) and for Full Disclosure of Other Acts Evidence the Government Would Seek to Introduce at Trial

---

[1] Defendant titled his Motion to Exclude 404(b) Evidence as a "Response to the Government's Untimely Rule 404(b) Notice." ECF No. [72]. For clarity, the Court will refer to the filing as a Motion, the Government's Response, ECF No. [73], as "Response" and the Defendant's Reply, ECF No. [75], as "Reply."

("March 21, 2025 Motion"). ECF No. [64]. The Government did not timely respond to the March 21, 2025 Motion nor did it request an extension of time in which to respond. On April 9, 2025, the Court entered its Order "granting [the] Motion to Exclude 404(b) Evidence and for Disclosure as to Michael Anthony Abbott[.]" ECF No. [68]. The Court noted that the "Government has failed to timely respond and the Motion is entered by default" and ordered the Government to "provide all requested information no later than April 15, 2025." *Id.* The Government subsequently filed a Notice of Other Act Evidence Pursuant to Rule 404(b), ("Notice") stating that it intended to introduce evidence that would demonstrate that "the Defendant regularly threatened to injure and kill people and knew that, when he threatened to shoot them, the communication would be viewed as a true threat." ECF No. [69]. In the Notice, the Government identified five occurrences which it argues "show that the Defendant knew or intended that his emails would be viewed as threats": (1) December 31, 2022 threats to kill Defendant's wife and in-laws; (2) testimony from Defendant's neighbor, D.I., that Defendant would yell at, chase, and threaten his neighbors; (3) Defendant's January 1, 2024 commitment under the Florida Marchman Act; (4) the recovery of a handgun, spent casings, and ammunition at Defendant's residence on January 1, 2024; and (5) an October 16, 2021 threat to Defendant's neighbor, M.T.

## II.  LEGAL STANDARD

Federal Rule of Evidence 404(b)(1) prohibits the introduction of evidence of another "crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence may be admissible, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). If the Government seeks to introduce 404(b) evidence in a

criminal case, the prosecutor must:

> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
> (C) do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3).

"To be admissible, the Rule 404(b) evidence (1) must be relevant to an issue other than the defendant's character, (2) there must be sufficient proof to allow a jury to find that the defendant committed the extrinsic act, and (3) the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and that the evidence must meet the other requirements of Rule 403." *United States v. Sanders*, 668 F.3d 1298, 1314 (11th Cir. 2012) (quoting *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992)); *see also United States v. Matthews*, 431 F.3d 1296, 1310-11 (11th Cir. 2005) (citing *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978)). "Rule 404(b) is a 'rule of inclusion,' and Rule 404(b) evidence 'should not lightly be excluded when it is central to the prosecution's case.'" *United States v. Harding*, 104 F.4th 1291, 1300 (11th Cir. 2024) (quoting *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) (citation and internal quotation marks omitted), *abrogated in part on other grounds by Rehaif v. United States*, 588 U.S. 225 (2019)).

"[T]he standard for evaluating the admissibility of a subsequent bad act under Rule 404(b) is identical to that for determining whether a prior bad act should be admitted under this rule." *United States v. Michel*, 832 F. App'x 631, 635 (11th Cir. 2020) (citing *United States v. Jernigan*, 341 F.3d 1273, 1283 (11th Cir. 2003)).

### III.   DISCUSSION

As an initial matter, Defendant argues that the Court's April 9, 2025 Order "excluded the

identified 404(b) evidence" by "granting Defendant's motion in full[.]" ECF No. [72] at 3. However, as the Government notes, "Defendant asked for two separate forms of relief" in his March 21, 2025 Motion: "exclusion and disclosure." ECF No. [73] at 3. The Court did not grant the March 21, 2025 Motion in full, as Defendant suggests, but ordered the Government to "provide all requested information by April 15, 2025." ECF No. [68]. Because the Government complied with the April 15, 2025 deadline, its Notice is timely and the Court will consider each of the proffered 404(b) acts on its merit. ECF No. [69].

A. **December 31, 2022 Threats to Kill Wife and In-Laws**

The Government seeks to introduce evidence that, two weeks after the charged conduct took place, Defendant's wife "called 911[2] and reported that her husband had threatened to kill her, her family and then himself." ECF No. [69] at 3. The Government states that this call will serve "as direct evidence of the Defendant's intent and knowledge" demonstrating that Defendant "knew that when he threatened to shoot the officers, it would be construed as a threat, just as it was when he threatened to kill his wife." *Id.* at 4. "In the alternative," the Government argues that the evidence is "inextricably intertwined because these two close-in-time incidents show how Coral Gables Police interpreted the Defendant's threats." *Id.* The Government states that it will "prove this incident occurred through introduction of the 911 call and the accompanying transcript." *Id.* at 3-4.

Defendant points out that the call was placed "two weeks after the charged email[.]" ECF No. [72] at 4. The Government responds that "[e]vidence that postdates an event can still be

---

[2] Defendant argues that the call was not to 911, but "to Coral Gables' non-emergency number. No charges were filed, no prosecution ensued, and there is no supporting documentation showing the threats occurred." ECF No. [72] at 4. However, in its Response, the Government attaches a transcript of the call in which Defendant's wife identified herself and described the threats. ECF Nos. [73] at 6; [74-1]. Whether the call was to an emergency or non-emergency number is irrelevant for purposes of the 404(b) analysis.

relevant to a Defendant's knowledge." ECF No. [73] at 5. As a hypothetical, the Government states that "if the Defendant had a communication with a friend" in which Defendant said "'I sure hope those officers were threatened by that email' then that communication would be relevant as to the Defendant's knowledge and intent in sending the email, even though the second communication postdated the first." *Id.* at 6. The Government states the "call goes to knowledge, not motive, that the Defendant knew and intended that his threats would be taken seriously[.]" *Id.* However, as Defendant replies that "the call . . . was made without [Defendant's] knowledge," therefore, it is unclear how the call can be introduced to prove that he knew his statements would be interpreted as threatening. ECF No. [75] at 2.

Even if Defendant did know about the phone call and that his wife and in-laws were threatened by his statements, it has no bearing on his intent two weeks prior, when the charged conduct took place. The sole case the Government cites to support its claim that subsequent acts may be used to prove intent is one in which the district court found that a subsequent letter "suggest[ed] that Beeman's anger at having been prosecuted . . . motivated his decision to mail threatening communications to N.H." ECF No. [73] at 6 (quoting *United States v. Beeman*, No. 3:21cr95, 2022 WL 22929169, at *2 (E.D. Va. May 9, 2022)). However, the circumstances of the subsequent letter in *Beeman* differ from this case in two respects. First, the subsequent letter introduced under Rule 404(b) was also found to be *res gestae* evidence. The court found that it was "intrinsic to the charges here because it continue[d] the threats" made against the victim of the charged conduct. *Beeman*, 2022 WL 22929169, at *1. Second, the subsequent letter "mention[ed] more details about [Beeman's] prosecution . . . in a manner that clarifie[d] his animus toward this investigating agent," who was the victim of the original threat. *Id.* The subsequent letter spoke "to the nature and extent of Beeman's threats toward N.H." *Id.* at *2. By contrast, there is no relationship between the threats Defendant allegedly made to his wife and

5

in-laws and the threats for which he is charged. Instead, as Defendant argues, "the sole purpose of [introducing] the call at trial would be to prove propensity. . . . [T]he call is being used to invite the inference that if [Defendant] threatened his wife and in-laws on December 31, 2022, he must have meant to threaten cops" when he sent the December 18, 2022 email. ECF No. [75] at 3.

Defendant also points out that, unlike the threats made to his wife and in-laws, the email for which Defendant is charged "was sent to a private group that did not include the objects of the offending messages[.]" *Id.* at 2. Therefore, the very purpose for which the Government purports to offer the phone call—to show that "Defendant knew that when he threatens to kill someone, they take it seriously"—would not be relevant because Defendant did not send the email to the police officers he was threatening. ECF No. [73] at 5.

In its Notice, the Government argued "[i]n the alternative," the December 31, 2022 threats are "inextricably intertwined because these two close-in-time incidents show how Coral Gables Police interpreted the Defendant's threats." ECF No. [69] at 4-5. Based on this representation, it appears the Government contends that the December 31, 2022 threats are "intrinsic evidence" that are "inextricably intertwined with the evidence regarding the charged offense." *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (quoting *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007)). For intrinsic evidence to be introduced as "inextricably intertwined," the evidence must be an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id.* (quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)). Defendant argues the December 31, 2022 threats and the charged conduct "occurred on separate dates [and] in unrelated contexts[.]" ECF No. [72] at 13. The Government failed to address this argument in its Response. As such, the Court views the Government's argument that the December 31, 2022

6

threats are inextricably intertwined with the charged conduct as abandoned. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."). Because the Government has not offered a proper purpose for the introduction of the December 31, 2022 threats, the Motion is granted.

### B. D.I.'s Testimony

The Government represents that it intends to call Defendant's neighbor, D.I., to testify that he has known Defendant for over twenty years and that, during that period, D.I. saw Defendant "yell and threaten other neighbors," "chase people on foot as they ran away from him" and "stare in their windows." ECF No. [69] at 4. D.I. will also testify that "in approximately 2021 or 2022, the Defendant 'got in his face' and told D.I. that 'I should kill you right now' and the Defendant and D.I. have not spoken in years, in part because of this incident." *Id.* D.I. will also testify that "he is afraid of the Defendant." *Id.*

The Government states that D.I.'s testimony provides "direct evidence of the Defendant's intent and knowledge" by demonstrating that Defendant "knew that when he threatened to shoot the officers, it would be construed as a threat[.]" *Id.* Specifically, the fact that Defendant's "threats against D.I. resulted in the end of that relationship" proves that "Defendant's words were taken seriously." *Id.* Similarly, the fact that people ran away from Defendant after Defendant threatened them also proves that Defendant knew "his words were taken seriously." *Id.* As with the December 31, 2022 threats, the Government also argues "in the alternative, it is inextricably intertwined because these two close-in-time incidents show how Coral Gables Police interpreted the Defendant's threats."[3] *Id.* at 4-5.

---

[3] As with the December 31, 2022 threats, Defendant argues in his Motion that "the altercation with D.I . . . occurred on [a] separate date[] [and] in [an] unrelated context[]" therefore it "do[es]

7

First, Defendant argues that the Government cannot prove that these incidents took place because the Government provides "no police report, no recording, no complaint—nothing but gossip from a disgruntled neighbor." ECF No. [72] at 5. This argument is unavailing because the Eleventh Circuit has "held that a single witness's 'uncorroborated testimony' can be sufficient to prove other acts' existence, so long as the testimony is based on 'personal knowledge of [the defendant]'s conduct.'" *United States v. Munne*, No. 23-10258, 2024 WL 4003395, at *5 (11th Cir. Aug. 30, 2024) (quoting *United States v. Barrington*, 648 F.3d 1178, 1187 (11th Cir. 2011)). Since D.I. would testify as to events he personally observed, such testimony could be sufficient to prove the other act's existence.

However, Defendant's second argument, that there is "zero parallel between D.I.'s proffered testimony and the context or content of the charged email," is more compelling. ECF No. [75] at 4. As with the December 31, 2022 threats, it is unclear how D.I.'s testimony would be relevant to Defendant's intent when he sent the December 18, 2022 emails. To the extent D.I. "told the Defendant that, when the Defendant said to D.I. that he would shoot him, it was alarming," the Government argues this will allow "the jury to infer that, when the Defendant said even *more* threatening things to other people, he knew or intended that they would *also* . . . feel threatened." ECF No. [73] at 8. However, it is unclear why Defendant's email would be construed as more threatening than his in-person threats to D.I. and others.

The key difference between the threats to which D.I. would testify and the charged conduct is that the threats D.I. observed all took place in person, whereas the charged conduct was entirely over email. The fact that the threats D.I. observed were made in person created a

---

not explain, illuminate, or complete the narrative of the December 18 email." ECF No. [72] at 13. The Government does not provide any explanation of its "inextricably intertwined" argument in its Response. Accordingly, the Government has abandoned the argument. *Access Now, Inc.*, 385 F.3d at 1330.

8

more immediate sense of danger, whereas threats over email could be viewed in a wholly different light. Furthermore, D.I. will testify to a series of direct threats, whereas the December 18, 2022 email was not sent to the police officers who Defendant threatened. Those differences suggest that the evidence would only be proffered for the prohibited purpose of proving that Defendant is an individual who has a propensity for threatening others. ECF No. [72] at 11-12. Indeed, the Government stated in its Notice that it "intends to introduce evidence from other people who interacted with the Defendant . . . who will explain to the jury that the Defendant regularly threatened to injure and kill people[.]" ECF No. [69] at 1. Because the Government has not provided a permitted use for the proffered evidence, the Motion is granted.[4]

### C. January 1, 2024 Marchman Act Commitment

The Government intends to introduce evidence relating to Defendant's commitment under the Florida Marchman Act on January 1, 2024. ECF No. [69] at 5-6. The Government states that, on January 1, 2024 at approximately 1:30 am, Coral Gables Police Department noticed a small fire was lit in a park and went to investigate. *Id.* at 5. They saw an unidentified man—later identified as Defendant—standing by the fire and asked why there was a lit fire. *Id.* Defendant ignored the officers' questions and stared at them silently until he suddenly "curled his palms into fists and began walking towards the officers in an aggressive manner." *Id.* After Defendant refused to follow the officers' orders to stop walking towards them, the officers detained Defendant. *Id.* "Once he was detained, the Defendant began making loud threats and

---

[4] The Government stated in its Notice that Defendant threatened D.I. "in approximately 2021 or 2022," suggesting it is unknown whether the event took place before or after the charged conduct. ECF No. [69] at 4. However, in its Response, the Government clarified "D.I. last spoke with the Defendant in March 2021, so his warnings all predated the Defendant's threats" for which he is charged. ECF No. [73] at 7. Even assuming D.I. would testify that the events he witnessed took place before the charged conduct, it would not have any bearing on Defendant's knowledge or intent.

9

insulting the officers." *Id.* The officers determined Defendant was intoxicated. *Id.* at 6. Defendant's wife arrived on the scene and "the officers offered the Defendant the choice to walk home accompanied by his wife" but Defendant declined and "told the officers to take him to jail," along with additional insults. *Id.* The officers took Defendant to the hospital where Defendant "continued to scream at officers, act erratically, and . . . physically struck an officer with his foot." *Id.*

The Government represents that these events will be proved "through witness testimony and video recorded evidence." *Id.* at 6. That evidence is offered to "show that the Defendant knows that, when he acts threateningly, he is not perceived as 'kidding' but rather as threatening." *Id.* The Government concedes that Defendant's "commitment under the Marchman Act might not be relevant," but argues that "the Defendant's interactions with the police which led to him being committed are probative here." ECF No. [73] at 8.

Defendant argues that the Government's attempt to link his "involuntary hospitalization . . . more than a year after the December 2022 email to his intent in sending that email" is "untenable." ECF No. [72] at 5. The events on January 1, 2024 are "wildly different in context, time and content" from the charged conduct. *Id.* at 10. As with the other events contained in the Notice, the Government argues the events leading to Defendant's commitment "show he understands the threatening nature of his choice of words." *Id.* at 9. This argument suffers from the same defects as the previous events the Government seeks to introduce. The fact that—a year after Defendant allegedly engaged in the charged conduct—police officers determined that Defendant "was too dangerous" to be allowed to "walk home unattended because of the threatening comments that he made" is irrelevant. *Id.* Defendant made those threats in person and directly to the person he was threatening—two important facts which distinguish the January 1, 2024 events from the December 18, 2022 email. Most importantly, those events took place over

one year after the charged conduct and are irrelevant to Defendant's intent at the time of the charged conduct. Therefore, the Motion is granted.

### D. Firearm Recovery

The Government seeks to introduce the fact that police recovered a loaded gun in Defendant's front lawn and four spent cases of ammunition on the sidewalk in front of Defendant's residence. ECF No. [69] at 6. The Notice also states that officers "determined that the gun was registered and belonged to the Defendant based on its previous recorded purchase history." *Id.* The officers learned that some of Defendant's neighbors heard a loud bang, "consistent with a gunshot" around 1:20 am and "Defendant was at or near the front of his residence" at 1:30 am. *Id.* at 6-7. The Government states that it "will prove this incident occurred through witness testimony and video recorded evidence" and that "these actions show that the Defendant knows that, when he acts threateningly, he is not perceived as 'kidding' but rather as threatening." *Id.* at 7.

Setting aside the fact that these events took place over a year after the charged events, it is unclear, based on the Notice, how the recovery of a firearm would be relevant to Defendant's intent when he sent the threatening email. The Government argues that it "show[s] the Defendant's knowledge and intent of how his actions would be perceived (as a threat)[,]" but the Government does not explain this connection. *Id.* With respect to the recovery of the firearm, the Government "does not claim [Defendant] made threats, nor does it offer any proof that [Defendant] possessed the firearm on December 31, 2023, much less that he used it in any threatening manner or discharged it." ECF No. [72] at 10. In Response, the Government asserts the recovery of the firearm "shows that the Defendant knew or intended his threat to shoot police officers was genuine because he had the ability to back it up." ECF No. [73] at 10. However, the fact that Defendant owned a firearm is irrelevant to the charged crime. By the Government's own

admission, the elements of a violation under Section 875(c) are "(1) that the defendant knowingly sent a threat, and (2) that the defendant sent the threat *either* (a) with the intent to communicate a true threat *or* (b) with the knowledge the communication would be viewed as a true threat." ECF No. [69] at 1; *see United States v. Hussaini,* No. 19-cr-60387, 2022 WL 138474, at *6 n.4 (S.D. Fla. Jan. 14, 2022) (quoting Pattern Crim. Jury Instr. 11th Cir. OI O30.3 (2020)). Defendant's ability to follow through on his December 18, 2022 email has no bearing on a charge under Section 875(c) because "[t]he speaker does not have to actually intend to carry out the threat for the statement to constitute a true threat." *United States v. Fleury*, 20 F.4th 1353, 1365 (11th Cir. 2021). The Government "has not explained, and we fail to perceive, any possible relevance" between Defendant's ownership, and alleged dangerous handling, of a firearm and the December 18, 2022 email. *United States v. Philibert*, 947 F.2d 1467, 1470 (11th Cir. 1991). Therefore, the Motion is granted.

### E. **M.T. Testimony**

The Government seeks to introduce testimony from Defendant's neighbor, M.T., regarding an incident on October 16, 2021 in which M.T. "was scared of being shot by the Defendant." ECF No. [69] at 7. The Government states that Defendant had "showed M.T. his collection of over 30 firearms, and proudly boasted that he owned an illegal bump stock." *Id.* After Defendant and M.T. had a falling out, "M.T. was walking his dog and heard the Defendant scream at him 'you're on my list' and turn towards M.T. with a black gun-like object in his hands. M.T. grabbed his dog, ran away, and called the police because he believed the item appeared to be a handgun."[5] *Id.* The Government intends to prove the incident occurred through witness testimony and argues that the incident serves as "evidence that the Defendant knew or

---

[5] The Government states that Defendant may not have, in fact, had a handgun in that moment. ECF No. [69] at 7.

intended that, when he screamed at people, they perceived it as threatening." *Id.* at 7-8.

Defendant primarily argues that M.T.'s allegations are "demonstrably false" and that "M.T. and his wife have connections to Coral Gables government, have harassed [Defendant] at every turn, and have made false allegations against [Defendant.]" ECF No. [72] at 6. However, even if the Government could establish the events took place as described in the Notice, the Government has not described a proper purpose for which the events may be introduced. First, the Government asserts that the October 16, 2021 events prove "that the Defendant knew or intended that, when he screamed at people, they perceived it as threatening." ECF No. [69] at 7. Even if Defendant knew that when he screamed at people, they would perceive it as threatening, the charged conduct involves the sending of a threatening email, not the screaming of threats. Therefore, the Government's argument is misplaced.

The alleged threats to which M.T. would testify are markedly different from the charged conduct. Notably, M.T. saw Defendant in person and believed he had a gun with him as Defendant made his threat. By contrast, Defendant is being charged for sending an email to individuals other than the officers he was threatening. The fact that Defendant may have known that if he threatened M.T. in person and with an object M.T. perceived to be a gun, M.T. would feel threatened, has no relevance to Defendant's state of mind when he sent the threatening email to individuals other than those who were the target of the threat. Therefore, the Motion is granted.

### IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Exclude 404(b) Evidence, **ECF No. [72],** is **GRANTED**.

13

Case No. 24-cr-20098-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida on May 20, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record