UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cr-20098-BLOOM/Elfenbein

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL ANTHONY ABBOTT,

    Defendant.
_____/

## ORDER DENYING BOND PENDING APPEAL

**THIS CAUSE** is before the Court upon Defendant Michael Anthony Abbott's Motion for Stay of Surrender Pending Appeal ("Motion"), ECF No. [169], filed on November 7, 2025. The Government filed a Response, ECF No. [173], to which Defendant filed a Reply. ECF No. [175]. The Court has considered the Motion, the record, the supporting and opposing submissions, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

    **I.**    **BACKGROUND**

On July 2, 2025, after a three-day trial, the jury found Defendant Michael Anthony Abbott guilty as to Count I of the Superseding Indictment: "knowing[] transmi[ssion] in interstate commerce any communication containing a threat to injure the person of another . . . with the intent to communicate a threat and with the knowledge that it would be viewed as a threat," in violation of 18 U.S.C. § 875(c). ECF No. [134]. Following the jury's verdict, Defendant filed a Motion for Judgment of Acquittal, ECF No. [147], and a Motion for New Trial, ECF No. [148], both of which the Court denied. ECF No. [158]. On October 22, 2025, the Court sentenced Defendant to ten months imprisonment followed by three years of supervised

Case No. 24-cr-20098-BLOOM/Elfenbein

release. ECF No. [163]. On November 3, 2025, Defendant filed a Notice of Appeal. ECF No. [166]. On November 10, 2025, the Court granted Defendant's Unopposed Motion to Stay Surrender pending the resolution of the instant Motion. ECF No. [171].

Defendant filed the instant Motion, arguing that the Court should allow him to remain out on bond pending appeal, pursuant to 18 U.S.C. §§ 3143(b) and 3145(c), because he presents no risk of flight or danger to the community, the appeal raises substantial questions of law and fact that are likely to result in reversal, a new trial, or a substantially reduced sentence, and the appeal is not for the purpose of delay. ECF No. [169]. Defendant argues the appeal raises four substantial questions of law or fact: (1) whether, as a matter of law, a conviction under 18 U.S.C. § 875(c) can stand "where the government secured a verdict only by substituting a different meaning for the undisputed plain meaning of the defendant's words . . . and by severing the statement from its self-defense context"; (2) whether a conviction under Section 875(c) can stand "where the Government relied solely on the tone of the message and the reaction of a single third party—contrary to *Elonis* and *Counterman*—while disregarding evidence establishing a reasonable, court-validated belief in lawful self-defense . . . all of which by definition negates any intent to commit unlawful violence"; (3) whether the Court erred in instructing the jury "that a 'conditional threat' could be a true threat, where the only condition present was lawful self-defense, which was the theory of defense, effectively nullifying that defense and permitting conviction for speech that, as a matter of law, could not reflect an intent to commit unlawful violence"; (4) "whether the Court erred in refusing to apply the four-level reduction under U.S.S.G. § 2A6.1(b)(6)." *Id.*

In its Response, the Government argues (1) Defendant is subject to 18 U.S.C. § 3143(b)(2), not (b)(1), because he was convicted of a crime of violence; (2) Defendant cannot

meet Section 3145(c)'s exceptional circumstances test; and (3) in the alternative, Defendant cannot show a substantial question of fact or law likely to result in reversal, an order for a new trial, or a non-incarcerative sentence. ECF No. [173]. In his Reply, Defendant argues that Section 3143(b)(1) applies, and Defendant has raised substantial issues on appeal. ECF No. [175].

## II.  LEGAL STANDARD

Section 3143(b) details two standards that the Court must apply when evaluating whether a defendant should be subject to release or detention pending appeal by the defendant, depending on the offense of which the defendant has been found guilty. 18 U.S.C. § 3143(b). Subparagraph (1) of Section 3143(b) states:

> Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
>> (i) reversal,
>> (ii) an order for a new trial,
>> (iii) a sentence that does not include a term of imprisonment, or
>> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

18 U.S.C. § 3143(b)(1).

If, however, a person "has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and sentenced to a term of

3

imprisonment, and who has filed an appeal or a petition for a writ of certiorari," the Court "shall order that . . . person . . . be detained." *Id.* § 3143(b)(2). Relevant here, Section 3142(f)(1)(A) includes cases that involve "a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed[.]" *Id.* § 3142(f)(1)(A). Additionally, a person subject to detention under Section 3143(b)(2) "who meets the conditions of release set forth in section 3143(a)(1)[1] or (b)(1), may be ordered released, under appropriate conditions . . . if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." *Id.* § 3145(c).

### III.   DISCUSSION

The parties disagree as to whether Defendant's crime of conviction—18 U.S.C. § 875(c)—requires that his Motion be analyzed under the more lenient 18 U.S.C. § 3143(b)(1) standard or the more stringent "exceptional reasons" standard under Section 3145(c). Specifically, Defendant argues that Section 875(c) is not a crime of violence, as described in Section 3142(f)(1)(A) and, even if it were, it does not prescribe "a maximum term of imprisonment of 10 years or more." ECF No. [175] at 1. Although the Government argues that the "maximum term of imprisonment" qualifier does not apply to crimes of violence under Section 3142(f)(1)(A), it recognizes that courts have split on the issue. ECF No. [173] at 5 & n.1 (citing cases). Without binding caselaw from the Eleventh Circuit, the Court need not decide the question because, as discussed below, Defendant has failed to demonstrate that his appeal raises a substantial question of law or fact, which would be required regardless of whether the Section 3143(b)(1) or Section 3145(c) standard applied.[2]

---

[1]Defendant does not argue that he has met the conditions of release set forth in Section 3143(a)(1).

[2] Defendant also has not pointed to any "exceptional reasons" as to why his "detention would not be appropriate." 18 U.S.C. § 3145(c). Defendant argues in his Reply that "[c]ourts routinely find

4

Case No. 24-cr-20098-BLOOM/Elfenbein

Whether a question is "substantial" for purposes of Section 3143(b)(1)(B) "must be determined on a case-by-case basis." *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985). A "'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *Id.*

First, Defendant argues that the appeal raises the following substantial question:

> whether, as a matter of law, a conviction under § 875(c) can stand where the government secured a verdict only by substituting a different meaning for the undisputed plain meaning of the defendant's words (relabeling 'onsite' as 'on sight') and by severing the statement from its self-defense context?

ECF No. [169] at 5.

Defendant argues that the Government's theory "relied entirely on isolating a single line ('I will shoot onsite: Plescow, Pino Perez, Andrew Steele, and Garcia') from the broader email chain[.]" *Id.* However, as the Government notes, "the jury 'is free to choose among the constructions of the evidence.'" ECF No. [173] at 8 (quoting *United States v.* McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001)). Indeed, "Defendant told the jury his preferred meaning[,]" but after considering all of the evidence "the jury rejected it." *Id.* The jury had the opportunity to consider all the emails in the chain that now Defendant argues were "excis[ed,] unambiguous references to self-defense, all linked only to Georgia." ECF No. [169] at 5. Although Defendant was only indicted for the email "I will shoot onsite: Plescow, Pino Perez, Andrew Steele, and Garcia", the jury was presented with the context of the entire email chain and ultimately rejected Defendant's interpretation of the evidence. *See* ECF No. [140-2]. As the Court stated in its

---

exceptional circumstances where the legal questions on appeal are novel, weighty, and likely to become controlling in future cases." ECF No. [175] at 5. However, Defendant does not cite any caselaw to support this proposition and, as discussed below, Defendant has failed to demonstrate that his appeal raises any substantial questions of law or fact.

5

Omnibus Order denying Defendant's Motion for Judgment of Acquittal and Motion for New Trial:

> Defendant did not state in the subject email that he would only shoot the named officers "in self-defense." He reaffirmed that he would shoot the officers in a separate email 30 minutes later, stating "[g]oing forward: If encountered, in self defense, I will shoot" the officers. ECF No. [140-2] at 1-2. Although Defendant argues that this subsequent self-defense statement provides context to his intent, Defendant also stated in the same email chain, "Ruby Ridge or Blue Ridge?" and "[a] cop that abuses their power should be shot dead, if necessary." *Id*.

ECF No. [158] at 9.

The Court concluded in its previous Order that "[a] reasonable jury could interpret those statements as undermining any contention that Defendant intended only to engage in lawful self-defense." *Id*. at 10. To the extent Defendant argues that the Government "rewr[ote] the plain meaning of 'onsite,'" Defendant also notes that "the Government conceded at trial . . . that a plain reading of 'onsite' referred to a site or place." ECF No. [169] at 4. Even if a plain reading of the indicted email yielded the conclusion that Defendant would shoot the officers "on site" in Georgia, Defendant still has not presented a substantial question of law or fact because such an interpretation would nonetheless satisfy the elements of Section 875(c). *See* ECF No. [158] at 8 ("[a]dding the buzz words 'self-defense' is not a 'get-out-of-jail-free' card for any threatening statement.") (quoting ECF No. [149] at 7).

Second, Defendant argues his appeal raises the following substantial question:

> whether a conviction under 18 U.S.C. § 875(c) can stand where the Government relied solely on the tone of the message and the reaction of a single third party—contrary to *Elonis* and *Counterman*—while disregarding evidence establishing a reasonable, court-validated belief in lawful self-defense against the very people who are the subject of the communication, had previously acted violently outside their lawful duties, all of which by definition negates any intent to commit unlawful violence.

ECF No. [169] at 6-7.

Case No. 24-cr-20098-BLOOM/Elfenbein

Defendant argues that the Government did not present "proof that the defendant either intended his words as a threat or knew they would be perceived as such[,]" but "relied instead on an argument of moral blame, arguing that [Defendant] was angry, frustrated, or intemperate and imposing the reaction of (primarily) one third party." *Id.* at 5-6. In Response, the Government notes that, "whether the Defendant had the requisite intent is a classic jury question." ECF No. [173] at 8 (citing *Williams v. Obstfeld*, 314 F.3d 1270 (11th Cir. 2002)). The Government further argues that, in order to establish Defendant's subjective intent, the jury could have relied upon

> (1) the Defendant's obvious anger towards his victims; (2) his motive for his anger; (3) his inability to recover civilly; (4) the Defendant's status as a well-educated professional; (5) the fact that he identified the victims by name; (6) the fact that the threats were made years later after he could not obtain any other recourse; (7) the fact that the threats were made to third parties (so the anticipated victims would not be tipped off); (8) the identified method of intended force (shooting) and (9) common sense to determine that the Defendant knew or intended that his statement would be perceived as threatening.

*Id.*

In Reply, Defendant argues that the Government "asserts that the jury could infer intent from anger, motive, and professional status, but none of these facts satisfies the *mens rea* required under controlling law." ECF No. [175] at 6. However, the Government argues that it "did not rely solely on the tone—it advanced contextual evidence that the Defendant had a years-long vendetta against the people he threatened." ECF No. [173] at 8. Indeed, it is unclear how the evidence presented by the Government fails to satisfy the *mens rea* required by *Elonis v. United States*, 575 U.S. 723 (2015) and *Counterman v. Colorado*, 600 U.S. 66 (2023). In *Elonis*, the Supreme Court stated "[t]here is no dispute that the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat or with knowledge that the communication will be viewed as a threat." 575 U.S. at 740. As the Court stated in its previous Order:

7

> Defendant expressed his animosity toward both the threatened officers and the individuals on the email chain. *See* ECF No. [140-2] at 2. ("Most of you are not welcome to me [sic] homestead. For those not welcome, bring body bags."). These repeated and violent emails provided sufficient evidence upon which the jury could have relied to find that the email in the Superseding Indictment was a "serious expression of an intent to commit an act of unlawful violence" to a group of individuals. *Black*, 538 U.S. at 359."

ECF No. [158] at 11.

To the extent Defendant argues that the jury could not rely upon "the reaction of a single third party" to the email in order to establish that Defendant intended or knew the email would be perceived as a true threat, he fails to explain why this evidence was insufficient. ECF No. [169] at 6. As the Court stated in its previous order, "[t]he language of § 875(c) does not require that the threat be made directly to the intended target; it simply prohibits 'any threat to injure the person of another' made in interstate commerce." ECF No. [158] at 6 (quoting *United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001)). The fact that Manny Fernandez's reaction to receiving the email "was to forward it to CGPD Chief Hudak demonstrates that he viewed it as a threat." *Id.* at 5. "The evidence supported that Defendant stated, 'I will shoot onsite:' and then named four police officers with whom he had previously had negative interactions. It would strain reason to suggest that those words were intended to communicate anything other than a direct threat on their lives." *Id.* at 6. Therefore, Defendant has not presented a substantial question of law or fact.

> Third, Defendant argues his appeal presents the following substantial question:
>
> whether it was error to instruct the jury that a "conditional threat" could be a true threat, where the only condition present was lawful self-defense, which was the theory of defense, effectively nullifying that defense and permitting conviction for speech that, as a matter of law, could not reflect an intent to commit unlawful violence.

ECF No. [169] at 9.

8

Defendant argues that "the conditional threat instruction, considered together with the evidence and self-defense theory of defense, created a logical and legal inconsistency[]" because "[t]he only condition present was self-defense, in Georgia no less." *Id.* at 7. Defendant relies upon the fact that a "true threat," which is not protected by the First Amendment, is one in which "the speaker means to communicate a serious expression of an intent to commit an act of *unlawful* violence[.]" *Virginia v. Black*, 538 U.S. 343, 359 (2003) (emphasis added). Defendant argues that because his "belief in the lawfulness of self-defense [was] not only sincere but legally reasonable[,]" his email did not express an intent to commit an act of *unlawful* violence. ECF No. [169] at 7.

In Response, the Government argues that "[t]he jury instruction did not say that *all* conditional statements are true threats (which would contradict the statement that a valid self-defense claim is not a true threat)." ECF No. [173] at 9. Indeed, it is unclear how "the instructions allowed the jury to convict [Defendant] even if it believed that the condition attached to the use of force was lawful[,]" ECF No. [175] at 6, as Defendant argues, given that the jury was instructed that "[a] conditional threat *can* be a true threat. In other words, a threat to commit violence unless a particular act is taken *can* be a true threat." ECF No. [130] at 7 (emphases added). The jury was also instructed that "[t]he law recognizes that self-defense is not unlawful violence." *Id.* Therefore, as the Government notes, "[i]f the jury believed that the defendant's conditional statement was a valid self-defense claim, they would have acquitted" because they were instructed that a conditional threat *can* be a true threat, but self-defense is not unlawful violence. ECF No. [173] at 9; ECF No. [130] at 7.

Furthermore, "Defendant fails to cite any caselaw to support his argument that merely adding the phrase 'in self defense'—in a separate email, 30 minutes later—to an otherwise

9

obvious threat of violence is sufficient to insulate him from prosecution under Section 875(c)." ECF No. [158] at 12 (citing ECF No. [140-2] at 1-2). Indeed, even if "the Miami-Dade State Attorney's Office had previously acknowledged that the state court in Mr. Abbott's 2020 Stand-Your-Ground hearing was poised to find that Officers Pino-Perez and Plescow were acting outside their legal duties, and that the State dismissed the case to avoid an adverse ruling[,]" ECF No. [169] at 7, as the Court stated previously, "this fact is insufficient to demonstrate that Defendant believed that *anytime* an officer approached his home, he would be legally justified in shooting them." ECF No. [158] at 9. Furthermore, Defendant's argument "cannot justify the threat against Officer Garcia, 'who was not present on the property in March 2020 at all[.]'" *Id.* (quoting ECF No. [149] at 8). Because, as the Court previously concluded, both jury instructions on conditional threats and self-defense were correct statements of law, Defendant has not raised a substantial issue of law or fact. *See id.* at 17.

    Fourth, Defendant argues his appeal presents the following substantial question:

> whether the Court erred in refusing to apply the four-level reduction under U.S.S.G. § 2A6.1(b)(6) by treating the line "I will shoot onsite, in self-defense" within a single email chain as a second threat, even though the record established one continuous, brief communication showing little or no deliberation, and where the alleged "second threat" referred expressly to lawful self-defense which, by definition and under *Virginia v. Black*, cannot constitute unlawful violence.

ECF No. [169] at 11.

    Section 2A6.1(b)(6) of the United States Sentencing Commission Guidelines provides for a four-level reduction if "the offense involved a single instance evidencing little or no deliberation[.]" Defendant argues that the December 18, 2022 emails were "only one communication: an email chain written over the course of a few hours . . . Nothing in the record supports that [Defendant] engaged in multiple acts or a deliberative pattern of threats." *Id.* at 9. However, as the Government argues, the series of emails sent on December 18, 2022 "were sent

10

*seriatim,* one after the other, not a single time with little or no deliberation." ECF No. [173] at 9. Indeed, the record reflects that Defendant sent several emails. At 8:12 pm on December 18, 2022, Defendant wrote "I am in Georgia. Most of you are not welcome to me homestead. For those not welcome, bring body bags." ECF No. [140-2] at 2. Seventeen minutes later, Defendant wrote "Ruby Ridge[3] or Blue Ridge?" *Id.* Nine minutes after that, Defendant sent the email for which he was indicted: "I will shoot onsite: Plescow, Peno Perez, Andrew Steele, and Garcia." *Id.* Over the course of the next nineteen minutes, Defendant sent two non-threatening emails, in which he stated that the individuals who he previously threatened to shoot "should be fired." *Id.* at 1-2. However, eleven minutes after stating those individuals should be fired, Defendant resumed his threats, stating that "Going forward: If encountered, in self defense, I will shoot Plescow, Pino Perez, a Steele, and/or Garcia." *Id.* at 1. In total, thirty minutes elapsed between the time Defendant sent the email for which he was indicted and "Going forward: If encountered, in self defense, I will shoot Plescow, Pino Perez, a Steele, and/or Garcia." *Id.* at 1-2. The passing of thirty minutes—and the fact that Defendant sent two emails separate, non-threatening emails before sending yet another threatening one—demonstrates that Defendant had sufficient time to deliberate over his words. To the extent Defendant argues that the second email was not threatening because he stated that he would shoot the officers "in self defense," as stated above, merely adding the phrase "in self defense" cannot absolve the Defendant of liability. Therefore, Defendant has not presented a substantial question of law or fact.

Because Defendant has not set forth a substantial question of law or fact to be raised in

---

[3] As the Court stated in its previous Order and "[a]s mentioned at trial, 'Ruby Ridge' likely referred to an incident in August 1992 in which FBI agents and United States Marshals 'engaged in an 11-day standoff with self-proclaimed white separatist Randy Weaver, his family, and a friend[,]' which resulted in the death of Weaver's wife, his son, and a U.S. Marshal. Ruby Ridge, Brittanica.com, https://www.britannica.com/event/Ruby-Ridge (last updated Aug. 26, 2025)." ECF No. [158] at 10 n.2.

his appeal, he has not satisfied the requirements for release pending appeal under either 18 U.S.C. §§ 3143(b)(1)(B) or 3145(c).

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Stay of Surrender Pending Appeal, **ECF No. [169],** is **DENIED**.

2. Defendant shall surrender to serve his sentence at the institution designated by the Bureau of Prisons or, if not yet designated, to the U.S. Marshals Service for the Southern District of Florida by **12:00 Noon on Friday, January 5, 2026**.

**DONE AND ORDERED** in Chambers at Miami, Florida on December 4, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record